810 F.2d 200
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Linnea G. GEIGER, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 85-3951.
 United States Court of Appeals, Sixth Circuit.
 Nov. 7, 1986.
 
 Before MERRITT, GUY, and NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Claimant, Geiger, appeals from a denial of social security disability benefits. Geiger is 36 years old and has been diagnosed as having multiple sclerosis. For purposes of disability insurance benefits, Geiger was insured at least through December 31, 1978. She claims a disability onset date of April 2, 1978.
 
 
 2
 After a full hearing at which the claimant was represented by an attorney, an Administrative Law Judge (ALJ) determined that the claimant had the residual functional capacity to perform sedentary work including her own past relevant work as a switchboard operator.
 
 
 3
 Upon appeal, the district court adopted a magistrate's report and recommendation affirming the ALJ. As did the district court, we find the ALJ's decision to be supported by substantial evidence and affirm.
 
 I.
 
 4
 Claimant raises two issues in this appeal: (1) did her insured status extend beyond December 31, 1978 and (2) was there substantial evidence supporting the ALJ's decision that she had the residual functional capacity in 1978 to perform sedentary work?[1] We discuss these issues seriatim.
 
 
 5
 The first issue is quickly resolved on the basis of the fact that there was nothing before the ALJ from which he could have determined that claimant's insured status extended beyond December 31, 1978. Subsequent to the hearing claimant's counsel submitted additional employment information which allegedly was not previously reported to the Social Security Administration. (Ex. 23, App. p. 117-18). This new information consisted of nothing more than a list apparently compiled by claimant's counsel of a number of part-time jobs held by claimant from 1965-76. The most critical employment, because it was the most recent, is listed as "Staff Builders--1967-76." No further proof, elaboration, or documentation is furnished and the dates of employment overlap with seventeen other listed part-time jobs. There is also no indication of which employment would arguably generate new quarters of credit over and above those already credited to claimant. Claimant has the burden of proof on this issue and wholly failed to make a record from which a determination as to continual eligibility could be made. However, we note on this issue that the ALJ left this issue open and made no ruling which would preclude the claimant at some future date from raising this issue if another claim for benefits were filed.[2] Nor do we.
 
 II.
 
 6
 Given the nature of claimant's impairment, the disability determination here is not without problems. Multiple sclerosis is normally a progressive disease and claimant testified she was getting worse as time passed. The ALJ was thus faced with determining claimant's work capacity at a point five years earlier in time. The matter is further complicated by the fact that notwithstanding the potential seriousness of multiple sclerosis there is very little medical evidence in the record and claimant had not regularly sought medical attention.
 
 
 7
 The analysis in a social security disability appeal generally involves an assessment of whether substantial evidence supports the Secretary's decision. However, the analysis of the substantial evidence question is not always the same. In some cases the substantial evidence which supports the Secretary's decision is to be gleaned from a weighing of conflicting medical evidence in the record. In other cases, and we conclude this is the situation here, a claimant simply fails to carry the burden of proof necessary for an award of benefits. In such a case the "substantial evidence" which supports the Secretary is to be found in the lack of evidence sufficient to preponderate produced by the claimant.
 
 
 8
 Putting it as simply as possible, the claimant here relied too heavily on the fact that she had a serious disease as if the incantation of "multiple sclerosis" in and of itself would carry her burden of proof. What the ALJ was actually presented with however was a young, normal appearing, articulate, married mother of three children, two of whom were born after the alleged onset date of her disability. Her entire work record was spotty and largely part-time. Thus, there was no bright line between when she was working and when she stopped. She was just a few credits shy of a college degree albeit she was no longer pursuing it. She was a licensed, unrestricted driver of an automobile.[3]
 
 
 9
 The medical history, particularly as it relates to the alleged onset date, is sketchy at best. Indeed, claimant stated that, since she was not working at the time, the alleged onset date is simply the date she went to see a doctor (App. 32). With regard to this medical visit it is important to note that it was an eye problem which prompted the doctor's visit. This is understandable since she has a father who is legally blind and a paternal grandmother with serious eye problems (App. 94). Significantly, however, it was not a work related problem or an inability to work which prompted her to seek medical attention.
 
 
 10
 Specifically with regard to the multiple sclerosis there is really little in the record. Dr. Majid concluded her multiple sclerosis is in remission. Although he is not the "treating" physician, his report is much more complete than Dr. Weingart, the treating physician, whose reports tend to consist of one paragraph conclusory letters sent to claimant's attorney. The distinction between treating and nontreating doctors is less relevant here in any event since the claimant is not regularly treating with any doctor.
 
 
 11
 Given that the ALJ had the benefit of direct observation of the claimant, a firsthand opportunity to assess credibility and an inconclusive medical record as to a point in time five years earlier, we conclude he reached the correct decision.
 
 
 12
 AFFIRMED.
 
 
 
 [1]
 Claimant has incorrectly framed this second issue as whether the finding of the ALJ was "against the manifest weight of the evidence."
 
 
 [2]
 Since the ALJ found that claimant was not disabled as of the date of his decision, May 26, 1983, he did not specifically rule on the question of additional quarters of coverage
 
 
 [3]
 Claimant indicated she did not drive often but she also testified that she did not have access to the family car at all times